Ok, Mr. Wade. Thank you, Your Honor. May it please the Court. Your Honor, this is a First Amendment retaliation case. It's about, excuse me, it's about retaliating against a former police chief because he filed a federal complaint. That federal complaint is found on the record excerpts at tab 8. And I call Your Honor's attention specifically to paragraphs 6, 7, and 10 of the complaint where it talks about his reporting to the Mississippi Department of Audit theft by the mayor. So he sued the mayor for theft. The auditor had investigated and recovered $3,000 from the mayor. Now, wait. You say he sued the mayor for theft? Yes. He sued the mayor because the mayor had started retaliating against him. I'm sorry, Your Honor. I'm a bit nervous. I'm sorry. Why would you be nervous? You've argued here about 7 million times. Well, that is a great question. I don't know how I could be. I think you make me nervous, Your Honor. But anyway, he sued the mayor in his individual capacity because the mayor was giving him all these frivolous write-ups. And I won't go into the details of that unless the court has a question, but they were all just frivolous. Playing basketball in city facilities? That's not pretty serious. Well, Your Honor, everybody— The mayor done the same thing? Yes. The mayor himself had been doing it. Your Honor, no, it was ridiculous. And the only person that had a key, of course, wasn't reprimanded about it. In fact, Judge Mills noted no other employee had ever been reprimanded by the mayor for anything. And the mayor himself testified he had no authority over running the police department. That's not—that issue isn't before us. We're here on—that's been taken care of. We're here on just the question of was he retaliated against in violation of his First Amendment rights because he filed this action? That's the only issue before us, plus the malicious interference with employment. Yes, I might say this, Your Honor. There's nothing in their brief to indicate evidence is insufficient that retaliation was a reason. They only say two things. They have two arguments. One is they say filing this suit was not a matter of public concern. They're not attacking the causation. They're saying there wasn't enough evidence to find retaliation. They're saying first that filing that suit is not a matter of public concern. That's their first argument. And you agree, don't you, that if it's not a matter of public concern, you lose on that issue? Absolutely. Absolutely. That would be a total defense. If that suit was not a matter of public concern, we lose. But here's what I'd like to tell the court. I challenge defense counsel respectfully, and I get along well with them, but respectfully, there is not a Fifth Circuit case that ever hints or says that reporting dishonesty by a public official, dishonest acts, is not a matter of public concern. His brief spends all his time talking about the content or the form of the speech. But every Fifth Circuit case has said that reporting it, and I can give the court some sites if you want them, but they're in the briefs and they're in Judge Mill's opinion. If you report dishonesty, if you report a crime, that is a matter of public concern. There is no authority otherwise. And that would be covered by your original action, your original 1983 action, where you said they retaliated against him because he turned the mayor in to the state auditor or whatever. But as I understand it, the issue we're dealing with here is different. His termination, was that based on a matter of public concern, i.e., you're filing the 1983 action? And, you know, the claim is, and Judge Mill's, I believe, found, but of course it's on summary judgment. This is de novo review. I think he found, no, this is a personal matter between your client and the then mayor. I don't know whether he's still mayor or not. It doesn't matter. Yes, sir, but let me point this out, Sean. Under the Supreme Court case we both cited, I think I pronounced it right, the question is whether the allegations in the complaint, in the lawsuit, are matters of public concern. And this complaint alleges matters of public concern. That's why I referred you on to paragraph 6. Plaintiff suspected the defendant of illegal criminal activity. Plaintiff reported to the Mississippi Department of Audit that defendant was utilizing taxpayer money and gas for private benefit. Those are allegations of public concern. What counsel has said and also what Judge Mill has, in effect, said is, well, he was motivated by his own, you know, he's motivated by the fact he's being harassed. But that's not the issue. The issue is not, you know, what is the motivation for the suit. The issue is whether the suit alleges matters of public concern, and they allege matters of public concern because it is a public concern that this complaint brings to the public's attention a matter of public concern, which is that I reported the mayor for this illegal activity and now I'm getting all these frivolous write-ups and attempts to fire me. He'd been trying to get the board to fire him. So that is a matter of public concern. And, Your Honor, every law, I mean, if he wasn't harmed in some way by it, when you say, well, this is a private concern to him, every time a person files a lawsuit he's filing it because he's been harmed in some way. Otherwise he wouldn't have standing to file it. So a holding that this is out because, well, he's complaining about him being harassed, that would mean a lawsuit could never be protected. Well, but as you know, the case law also speaks to internal employment disputes as not being matters of public concern. So we have to decide which side of the law this falls on, but I'm not sure that you can claim that it's all or nothing just because the lawsuit was filed. Well, Your Honor, the way I understand it, and I don't mean to argue with the court, but the way I understand it is things like complaining about overtime or work conditions or the person's unduly harsh or they don't let me attend a funeral, that's what we're talking about about things that are just purely, you know, not of any interest to the public. If it's of interest to the public, and what I'm telling Your Honor, what I'm suggesting to Your Honor under this court's precedence, that the mayor is engaged in criminal activity is a matter of public concern. That's contained in the complaint. And then that he harasses and is trying to get rid of the police chief because he reports the mayor for his activities is a matter of public concern. And I'm just, what I'm telling the court is you could look until you're blue in the face, but I don't believe any Fifth Circuit case has ever suggested that malfeasance, and I've cited several of them, but malfeasance or dishonesty in public office is a matter of public concern. Is your argument that the underlying allegations of the first suit, which involved theft of public money, that that establishes the matter of public concern, or is it that filing a lawsuit saying that the mayor is retaliating against me for blowing the whistle on his theft, that that retaliation is the matter of public concern? Both, Your Honor, both. The speech is set out in the First Amendment. It sets out that the mayor is involved in theft. And it also sets out that once I reported that theft to the Department of Audit, that's my . . . But the lawsuit didn't, he'd already, years before he'd reported the theft, right? I think in 2006 . . . Your Honor . . . . . . he reported the theft. So the lawsuit didn't really blow the whistle on the theft. That whistle had been blown long before. So it seems to me it's more a question of whether the lawsuit, by alleging the mayor's retaliating against the police chief for blowing the whistle on him, I mean, it all gets a little complicated here, but that that is what you'd have to show is the matter of public concern by filing of the lawsuit that then the city retaliated against by firing him. Your Honor, what I'd say is the specific question is you take the suit, and if the suit alleges a matter of public concern, then it's protected. That's all I'm saying. The fact that it's in a lawsuit, if it was on Facebook or something, any place the public could see it, it's a lawsuit. As I understand that, reading of the United States Supreme Court, you have to apply the same test whether it's a lawsuit or whatever it is. And, Your Honor, those dates are really confusing and misleading. There's, in the record, this was reported to the public. The public didn't learn the mayor had to pay back the money until June of 2010. I understand. When he makes these reports, they're confidential. So exactly when the mayor found out he was reporting him, and he was the one reporting him, it's very ambiguous in the record. We know that he knew as of June 2010 because there's a newspaper article in there saying he had to repay back the money. But when the mayor found out about it, you know, he relies on this. Well, you reported me a long time ago. There was a lengthy investigation, and they were confidential. Just to set the procedure, though, because to me it's very important, the original 1983 action was only against the mayor in his individual capacity. Yes, sir. And that ultimately was thrown out based on qualified immunity, that one. But 10 months after you filed that action against only the mayor, and 10 months later he was terminated, then you amended your complaint to bring in the city only on the claim that it violated his First Amendment rights by terminating him in retaliation for filing this 1983 action against Kilpatrick, the mayor. Exactly right, Your Honor. And that's the issue we're dealing with today. That's the only issue before us other than this state law malicious interference claim. And that's where I'll just, you know, we've got to look at it, but the fact that you made these allegations against the mayor, and that's been dismissed, I'm not sure that carries over, and I'll have to look at the complaint, that carries over to your retaliation claim against the city solely because it terminated him for his 1983 action against Kilpatrick in his individual capacity. Yes, I understand. Your Honor's stated it precisely. The only thing I can say, Your Honor, if you're deciding whether free speech rights were violated, to me, it's just logical. You have to say what speech did he exercise, what did he say. So you look at what he said in his complaint that's shown out in paragraph 8 and paragraph 10, and he talks about the fact that he reported the mayor, and the mayor then in retaliation gave him all of these frivolous write-ups and is about to get him fired. He filed a complaint against the reason he didn't sue the city is the city hadn't done anything. The board wouldn't fire the chief for doing this. The board resisted up until the time he filed his suit. In fact, the actual event that really precipitated the firing was all the board got served with deposition subpoenas, and then they fired him the next month. They served him with deposition subpoenas on September 6, and on that same day they gave him a write-up, and then they fired him the next month. So the suit alleges matters of public concern, and to me you would just look at the complaint to see whether or not it alleges matters of public concern, and it does. The only other defense that they raise, Your Honor, besides claiming that the suit is not a matter of public concern, is they say, well, you can't have all this animosity between the mayor and the chief, that the mayor, you know, we just couldn't tolerate that, so we had the right to get rid of him. But the problem with that is all that animosity had been going on before the suit was filed. That's what he was complaining about, and as Judge Mills pointed out, I really refer, Your Honor, to Judge Mills' opinion when he initially denied qualified immunity. He was essentially saying, I know this circuit is held otherwise now, or they didn't address the issue, but implicitly they held otherwise. He said you can't have qualified immunity when all this bogus write-ups are going on, and he goes on and on about how bogus the write-ups are that he's given him, how he doesn't ever write up anybody else. He doesn't even have authority under state law to be supervising the police department. He writes him up, for example, when he goes to help out a dangerous situation in a county that's in a standoff with somebody. He goes to do that, and he writes him up without telling him about it. So all of that is why he filed the suit. And, Your Honor, if he can't file a suit about this, I just suggest how do we combat criminal activity going on by public officials? I mean we have the mayor here. The only logical one that can do anything about it is the police department. Well, I guess in your first action you would have had to show that somehow the supervisors or aldermen or whatever it is, city council, was blessing or approving the treatment he was receiving by the mayor, but you didn't say that, and as you said, you didn't say it because the council wouldn't fire him, even though the mayor wanted him fired. Yes, because it wasn't true at that point. They were resisting. So the city wasn't having anything to do with the harassment that you allege in your original complaint. The original complaint, it would be totally improper. It would be subject to sanctions to sue the city for something they weren't doing. They're here telling the mayor, no, we're not going to fire the guy. He's reported you for illegal activity. You've cost the city $3,000, and he uncovered it. We're not going to sue the city. They hadn't done anything wrong. But then when he files a suit against the mayor trying to save his job, essentially, against the mayor individually, then they turn around and sue him. And so, I mean, they turn around and fire him. So at that point, he has filed a suit on a matter of public concern. They fire him ten months later. They fire him ten months after he filed the first action. Yes, but one month. After they received their notices to be deposed. Yes, and there was also one of the aldermen testified, gave direct evidence. Judge Mills said it's close to a smoking gun and saying the board's upset by the fact that you filed that suit. So the evidence is not questioned. The question is, is it a public concern? And we say you can't look at that complaint and look at this court's precedents. I know the court's precedents don't deal with complaints, but we suggest that a federal lawsuit is not treated any different than anything else. And the complaint makes allegations of public concern. And, Your Honor, those are the only two defenses that are raised, so there's no point in my discussion. I want to mention the state law complaint. Your Honor, this court in the Johnson v. Shelby case, just in all deference, went far all wrong when they interpreted Mississippi law to say that a notice of claim has to be filed when you're suing an individual under state law. But Johnson is a published opinion. I know you think it's not quite present because it originally was unpublished, but, I mean, that's your argument, that somehow we can do something other than what Johnson says. Well, let me suggest this, Your Honor. It creates a real terrible problem because you have to file a suit, I mean, a notice of claim against an individual. You don't serve it on an individual. You have to serve those notices of claims on the city clerk. And so he won't know anything about it. It's just a totally absurd result. I mean, the Tort Claims Act is for the protection of the government, to give the government an opportunity to respond. So the result is just totally absurd and contrary to all the Mississippi cases, and Whiting doesn't support it that was cited by this court. And I've suggested, I accept what Your Honor said, of course, we've got to file a precedent, but there's nothing to keep this court from certifying it to the Mississippi Supreme Court. I know Your Honor doesn't want an in-bank hearing and a state law question, but it's just a horrible application of Mississippi law. It's not what Mississippi does. I've never noticed, I could be wrong about this, but I've never noticed to certify a question that's already been decided. Normally we just do that because an issue hasn't been decided. Well, Your Honor, the problem is it really creates a horrible result because now any time you want to sue under the State Tort Claims Act, a malicious act or a criminal act is not subject to the Tort Claims Act. You sue the individual. So the result of this court's panel decision is even though your claim is against the government, you have to file a notice of claim. I mean, although your claim is against an individual and not against the local government, you've got to file a notice of claim. You've made your position clear on that. Thank you, Mr. Wade. Thank you, Your Honor. A little time for rebuttal. Thank you, Your Honor. Good morning, Your Honor. This is Nick with the police and court. There, of course, there is . . . How many cases have you argued to us, Mr. Butler? This is my first one and I'm also nervous. We're delighted to have you here, Mr. Butler, clerk for Judge Southwick, and we're happy to have you here as we're happy to have Mr. Wade here. Thanks, Your Honor. There are, of course, various elements that a plaintiff must prove in order to prevail on a First Amendment retaliation claim. The district court resolved this case on the public concern element, and there are two related ways to affirm that conclusion. The first is to simply hold that as a matter of law, a plaintiff cannot transform what has already been determined to be unprotected speech into protected speech by putting it in a lawsuit. The second way . . . But it was only unprotected speech our court found in the first case because in reporting the theft to authorities, we said he was speaking as an employee, not as a citizen. We never reached the matter of public concern question, right? That's correct, Your Honor, and I would submit to the court that these elements of the case are simply a screening mechanism to determine whether the speech is ultimately protected or unprotected, and the end result of the case was that it was unprotected under the First Amendment. The second avenue to reach the same result would be to run Gibson's complaint against Kilpatrick through the more traditional content, form, and context analysis, and taking either of these approaches leads to the same result, and that is that the complaint is unprotected. The red herring in this case is that Gibson wants to ignore the outcome of the first appeal. The only thing about the complaint in question that he alleges would trigger First Amendment protection is the portion of the complaint that alleges that he reported the mayor to the state auditor's office. The problem with that argument is that this court said in the first appeal that, and I'll quote this, that the facts of this case make clear that Gibson's reports to the state auditor's office were made pursuant to his official job responsibilities. So the only question is whether he can take that unprotected speech and pursue it through a petition clause claim under the First Amendment. The answer is that he cannot do that because allowing him to do that would elevate the petition clause over the speech clause. The Supreme Court first said in McDonald v. Smith that the petition clause or redress of grievances claim provides no greater constitutional protection than the speech clause, and this court made the point even more emphatically in the Grace v. Board of Trustees case where the panel said, writing through Judge Smith, that there is no support in either authority or in logic to construe the petition clause more broadly than the speech clause. So the general rule that you have from these cases is that if a plaintiff loses on the speech clause claim, then he necessarily also loses on a petition clause claim made up of that same speech. Interestingly, the Borough of Duryea case, the 2011 Supreme Court decision that we sought in our brief, they actually foreshadowed this exact case during the oral argument in their case. You had three different justices. You had Justice Ginsburg, Justice Kennedy, and Justice Roberts. They all made the point that it would be illogical to allow a plaintiff to circumvent the Garcetti rule through a redress of grievances claim. Justice Kennedy in that case, he directly asked the plaintiff's attorney during the argument, he said, surely you're not arguing that District Attorney Garcetti would have lost the Garcetti case had the plaintiff merely pursued it through a lawsuit and couched it as a petition rather than calling it speech. And you had no justice on the court that expressed any disagreement with the point that he was trying to make, and that is that if you're going to say on the one hand that the petition clause and the speech clause have to be interpreted in a congruent fashion, then you can't also allow a plaintiff to recycle the speech clause claim through the petition clause claim. You have four different courts outside of this jurisdiction who've applied what the general rule has always been in this circuit to the specific factual circumstances of a case just like this one. We rely in the Rotello case, the Second Circuit case in our brief, but it actually was the District Court opinion in that decision that just said there's a per se rule that because the plaintiff lost on Garcetti, he necessarily loses on the petition clause claim. That goes up to the Second Circuit in 2008, and they say, oh, we're not sure about this per se rule. We're going to go ahead and apply a content form in context because you've reached the same result. But then you have Borough of Duryea from the Supreme Court in 2011. After Borough of Duryea, you have two other courts that they look back and they say, no, it was the District Court in Rotello. They got it right. You've got a case from the District Court of Connecticut. It's the Lennox case, and they say that it would be illogical to allow a plaintiff to just circumvent Garcetti in a second petition clause lawsuit. And probably the most in-depth treatment of the issue comes from a case. It's a Ross case. It's from the Eastern District of New York. And there, what they do, they analyze the Borough of Duryea case in detail, and they latch onto this language in the Supreme Court case where they say, well, we may see some hypothetical circumstances where the petition clause and the speech clause, they could protect different things, but the quote was that there is no occasion for such a divergence in the context of public employment. Which is exactly what we have here. To my knowledge, the only case that has ever grappled with this per se issue and rejected it is a Third Circuit case. It's called Foreraker. Now, that was a 2007 Third Circuit case, but the plaintiff ultimately lost his petition clause claim on other grounds. But the reason that they rejected this per se rule is because they said, no, we think the petition clause and the speech clause protect entirely different things. Well, a subsequent Third Circuit case, that's the Borough of Duryea case that goes up. And Borough of Duryea actually cites to the Foreraker opinion in its opinion and abrogates the decision. So every other case out there who's tried to grapple with this issue, they've all come to the same result. And it's consistent with what this court has always done in redress of grievances claims as well. What's a little odd about this case is that you have these different layers of speech. In most cases, the traditional case, you'll have a memo. And what a plaintiff will say is say, okay, my memo is protected under both the speech and the petition clause. And this court has always said, okay, we'll do the speech clause analysis. And once we determine that it's unprotected under the speech clause, then we need not go any further under the petition clause because the petition clause cannot protect anything greater than the speech clause. This is a little different here because it's a different speech. But the only thing about the complaint that is alleged to trigger the protection is the original speech, which has been determined to be unprotected. So all of these cases are consistent. I think the way we say it in our brief is that the bottom line for us is the unprotected speech equals unprotected speech. So we would ask this court to consider, as these other courts have, whether there's just a per se rule that the claim fails. The filing of the lawsuit, as Judge Barksdale has been pointing out, it's a separate question. Here, the protected activity he's claiming is the filing of the 1983 lawsuit against the mayor, saying you retaliated against me for reporting you for stealing public funds. Is it your position that he was acting, under the district court didn't address this, but in filing that lawsuit, was Gibson acting as a citizen or as an employee? In filing the lawsuit, he wasn't acting as an employee in filing the lawsuit. But the principle is— So it's not part of your ordinary duties to go sue the mayor. It's not a part of your ordinary duties, Your Honor. But the only thing that would trigger the First Amendment protection are those allegations, which has already been determined to be unprotected. So perhaps the way to ask— So you basically agree with the opposing counsel that it is a matter of just looking at the allegations underlying the first case, not so much as figuring out, well, is this 1983 suit itself a matter of public concern or just a personal airing of employment grievances? I don't, Your Honor. I think that there's two different ways to look at it. You can say, well, there's a per se rule, as I made the point that—as I made that point. Right, I understand. But then the second question is, well, can you just add other non-public elements to that speech that has already been determined to be unprotected? And does that somehow morph it into protected speech? And it can't do that because the principal allegation of why it would be protected, it's already been determined to be unprotected under the First Amendment. And I know, Your Honor, I'm aware of your College of Mainland case, but this case is different than that case. In that particular case, the— But the underlying speech was protected. Right. It was protected. And this is a different case. The principal allegation is unprotected, Your Honor. So even if— But just stepping back and looking at—let's say it's not a per se rule. The district court didn't find it. He just said, let's look at the totality of this. And he thought it was not a matter of public concern. But why isn't it a matter of public concern that the mayor— Why isn't he advocating against the police chief for whistleblowing? Well, Your Honor, I guess one way to ask the question is, is a complaint about unprotected speech a matter of public concern? And we would say the answer to that question is no. But if you look at it and you run it through these traditional content, form, and context factors, the only part—this court has always said that the content factor is less important than the context and the form factors. That's significant because the only thing that the plaintiff would argue would trigger any protection is the content factor. Now, it's telling that in the brief the plaintiff doesn't even mention the content form and context factors, much less make any attempt to apply those factors, which we would suggest is because they so heavily weigh in favor of the city of Drew. And what the courts are ultimately getting at in the application of these factors is what's the point of the speech? Is the point of the speech to expose some public corruption or wrongdoing, or is the point of the speech to further a personal interest of the plaintiff? That's the key language from the cases. And Judge Costa, as you pointed out— Personal interest as an employee. Well, yes, Your Honor, and here you have that. What he's trying to further is his employment actions that are personal to himself alone. And as Judge Costa mentioned, the timing of all of this is especially significant. The predicate speech here is the December 2010 lawsuit. Okay, these reports came four years before. And, in fact, the investigation was over and done with. The money repaid back a full two years before the lawsuit was filed. And Mr. Wade said something. He gave a date about when the public would have been aware about it, of this activity. But there's a newspaper article in the record that says September 2008 is when everybody would have known and discussed this. So there's nothing that he was exposing. It was already in the public sphere. Everybody knew about it. What the reason behind the December 2010 lawsuit, that was to further his own personal employment matters, to obtain monetary damages for himself alone, and to challenge personnel actions that were personal to himself alone. The cases make a distinction between plaintiffs who challenge adverse actions personal to themselves and those who may challenge some citywide misconduct. So that's an important distinction. And he also said he challenged us to cite a case. I'd point to the Teague case, Your Honor. That was a mixed speech case like this one. The court has said if you have an underlying complaint or any other mechanism that you're challenging under the First Amendment, then if you have portions of it that may be of public interest and then you have personal interest, well, you've got to apply a predominance test and say is it predominantly public or is it predominantly private? And here it's predominantly private because of those factors I mentioned previously. The form factor also supports our position as well. The Supreme Court first said, I think, in Firestone v. Time, Inc., that there's nothing about a courtroom battle that would trigger concern to the ordinary citizen. We cite a Seventh Circuit case in our brief. Judge Posner says something to the effect of lawsuits don't come trailing in First Amendment glory. And this court held that same thing in the Snead v. Aggregated Systems case. That was reaffirmed in the Borough of Duryea case. But what's interesting about Borough of Duryea is you had two justices who would have held that complaints are never even qualifying petitions, that you don't even get to the analysis because they just can't qualify. In Justice Scalia's separate opinion, he actually cited a law review article that Judge Higginson from this court wrote during his days at Yale. And the point that he was getting at was at the time of framing, the petition clause was aimed at petitions directed at the government as a sovereign, not as the government as a public employer. Now, ultimately, what the majority opinion said in Borough of Duryea was that, no, the parties have not briefed this issue and that's not properly before us. So we're going to assume basically without deciding that such complaints could be qualifying petitions. But the point is important in that there's nothing about the form of the speech, the lawsuit, that would trigger any kind of First Amendment protection. And then, of course, the context factor, that's especially the one that weighs so heavily in favor of the city of Drew. I would again say, even if you don't adopt the per se rule, that the fact that the underlying lawsuit was determined to be unprotected, then that speaks to the context factor. The motivation of filing the lawsuit speaks to the content factor. The motivation alone is not dispositive, but it is certainly an inquiry. That's from Connick v. Myers. The timing of it, again, because it was already in the public sphere at least by 2008, two years before, that speaks to the context factor. And the point that this is a personnel dispute, that puts it on par with a long line of cases from this court. Day v. South Park of Independent School District, Grace v. Board of Trustees, the Teague case, the Short case, the Raytheon case, the Stoddard case. How do you distinguish Oscar Renda contracting, where we said a contractor had sued El Paso on a First Amendment retaliation claim. Then they claimed they didn't get a bid with another government entity because of the lawsuit, and they said they were retaliating against us for airing this other First Amendment retaliation suit. And we said, since it's alleged that the first lawsuit involved a matter of public concern, the retaliation, then that sort of automatically means retaliating for filing the lawsuit on a matter of public concern is itself a matter of public concern. I know in your brief you say, well, that was just a Rule 12 stage case. But it doesn't seem to me it was about the sufficiency of the pleadings. It was just about, as a Rule 12, you can decide legal matters. A matter of public concern is a legal question. So how can we distinguish that case? Your Honor, I think if you actually read that opinion, it actually says, it's Context 12-6, and it says it's enough to put the defendant on notice is what it says. And that's the exact way that other courts have distinguished that case. I think we cite a case in our brief that also distinguished the case. Maybe a District Court of Arizona case, if I recall it directly. But that's 12-B-6 standard. That's pre-Twombly and Iqbal even. So, of course, the court was hesitant to dismiss the complaint at the 12-B-6 stage. So, Your Honors, whether you apply a per se rule or whether you run this complaint through the more traditional content form and context analysis, the result is exactly the same. Mr. Wade made a point, and I think he made it twice, and he did a good job of it. As my notes indicate, what he says is reporting a crime is always a matter of public concern. No Fifth Circuit case says that malfeasance isn't a matter of public concern and that the retaliation itself is a matter of public concern. Can you deal with our case law and respond to that? I can, Your Honor. First of all, the characterization of it as a crime is a little unfair. All right. Well, let's assume that's a fair characterization and just deal with it that way. Of course, they've never been charged, still, the mayor today. But what's different about it is cases say that in the abstract. If that's all that the speech is, that's Gibson 1. If you go and give the speech and that's what it's about, then, yeah, of course, that's a matter of public concern. What's different here is the predicate speech is the lawsuit, and you have these added personal components. That throws it in the mixed speech zone, and you have to do the predominance test, and you have to look at, yeah, there may be a portion of it that is of public concern, but there's also all these personal aspects, and we've got to decide whether it's predominantly public or predominantly private, and it's predominantly private here because that's the sole aspect of the claim that would trigger any kind of First Amendment protection were these allegations which, against the backdrop of this court's first opinion, have been determined to be unprotected under the First Amendment. I know my time is running short. I would, again, just raise the alternative ground of affirmance. We have the Pickering balancing test in our brief. The important point there is, of course, you've got to weigh the city's interest with the plaintiff's interest. On the plaintiff's side of the equation, there's nothing because it's already been determined. The predicate speech has been determined to be unprotected and to be without merit. The lawsuit has been dismissed, so there's nothing on the plaintiff's side of the equation. On the defendant's side of the equation, you have a municipality with less than 2,000 people. You have a six-person police department. You have a long record of disruption in the police department before the suit, and there's nothing in this court's case law that would suggest that adding more fuel to the fire somehow makes it where there's no more disruption. It was even more disruptive, Your Honor, and what I would point to post-lawsuit disruption in the record would be the memo that the mayor wrote in response to the corrective action plan and the testimony of Alderman Smith where he said 90% of the—in response to the plaintiff's counsel question about why did you vote to terminate Gibson, he said, well, 90% of the board of aldermen meetings are met with these two being at each other's throats, and we can't get anything accomplished on behalf of the city. And Borough of Duryea talks about how especially disruptive lawsuits can be, and even more so than more traditional terms of speech. And I apologize for going over, Your Honor, but I would just— Yes, your time has expired, and thank you. Thank you, Your Honor. Adding fuel to the fire wasn't a reference to the gasoline, was it? Not intentionally so, Your Honor. All right, Mr. Wade, you've saved time for rebuttal. Your Honor, counsel must have said five or six times that it's been determined by this court that the initial speech was unprotected. That is 100% totally, absolutely wrong. The holding of this court was that there was good faith immunity, that this fell under Garcetti. This court specifically said it would not reach the issue of whether or not the speech was protected. So for him to say that it's been held unprotected, that is totally wrong. This court, when it found qualified immunity, relied on something different from what's in the complaint in this case. Our complaint is that the chief complained to the auditor. The auditor's in responsibility for collecting money civilly. This court, in its opinion, relied on the fact that he's the chief. He's the police chief, and it's his duty to enforce the criminal law. And he's been talking to the Bureau of Narcotics, which was part of his duty. The mayor had been—he'd gotten a report from another policeman. He'd caught drugs on the mayor. He's talking to the Bureau of Narcotics, and he was talking to the FBI about it, and he said this court found, well, that's part of his police duties. This civil complaint alleges that I made a complaint to the state auditor. That's a civil thing. So the fact that this court granted good faith immunity to an individual defendant does not mean that this court has determined that there's no merit to its claim or that it did not violate the First Amendment. So that's just absolutely wrong. This case is case-based. As the complaint alleges, I reported to the state auditor. The state auditor did an investigation. The newspaper article I have is on page 814, and it reports it as of June of 2010 saying the audit was completed in that spring. But, I mean, I don't know which one he's referring to as being earlier. But in any event, he put in his complaint that I've been retaliated against because I reported to the state auditor that the mayor's stealing. He had to pay back the funds, and now he's retaliated against me by all these unjustified write-ups. And under every precedent from this court, Your Honor, I suggest that's protected speech. I agree with counsel, Your Honor, that it doesn't make any difference that it's in a lawsuit. That's the holding of that 2011 Supreme Court case. A petitions clause is no different. The question is what's in the lawsuit, and that is protected speech that's in the lawsuit. I might just tell the court a recent case this court has had. Grazioni v. City of Greenville goes into this 775 F. 3rd 731 at 738. It is well established that speech exposing or otherwise addressing malfeasance, corruption, or breach of public trust, especially within a public police department, touches up all matters of public concern. But that's said over and over again. And I can cite to court the Riley cases. That was before this court three times, the Riley case where they reported an assault, a criminal act that's protected speech. The only question you get into is the question that's not before the court, they've never raised, is the Garcetti issue. That's not here this time because there's no contention that he was going about his duties as a police officer when he filed a complaint. So, Your Honor, we think this is a simple case that complaint is protected speech, and there's an issue of fact as to whether they fired him because of it. And if Your Honor gets into whether these write-ups were justified, I'd just refer the court to Judge Mill's opinion, the memorandum opinion, that correctly sets out all the reasons why these things were so frivolous and done just because he, I'm sorry, my time, they were done just because he complained about illegal activity. All right. Thank you. Thank you, Your Honor. Your case is under submission. Last case for today.